**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **VIRTUAL CREATIVE ARTISTS, LLC,**<br><br>Plaintiff,<br>v.<br><br>**GRUBHUB HOLDINGS INC.,**<br><br>Defendant. | C.A. No. 1:24-cv-00662<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virtual Creative Artists, LLC files this Original Complaint for Patent Infringement against Grubhub Holdings Inc. and would respectfully show the Court as follows:

## I. THE PARTIES

1.      Plaintiff Virtual Creative Artists, LLC ("VCA" or "Plaintiff") is a Delaware limited liability company, having business address at 338 Gracious Way, Henderson, NV 89011.

2.      On information and belief, Defendant Grubhub Holdings Inc. ("Grubhub" or "Defendant") is a limited liability company organized and existing under the laws of Delaware. Defendant has a place of business at 111 W. Washington St. Suite 2100 Chicago IL 60602. Defendant has a registered agent at Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

## II. JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Illinois Long-Arm Statute, due at least to its

business in this forum, including at least a portion of the infringements alleged herein at 111 W. Washington St. Suite 2100 Chicago IL 60602.

5.      Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Illinois.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Illinois.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Illinois. Defendant has committed such purposeful acts and/or transactions in Illinois such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has a businesses address in this District at 111 W. Washington St. Suite 2100 Chicago IL 60602.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.       For these reasons, personal jurisdiction exists and venue is proper in this District under 28 U.S.C. § 1400(b).

### III.   COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,501,480)

8.      Plaintiff incorporates the above paragraphs herein by reference.

9.      On November 22, 2016, United States Patent No. 9,501,480 ("the '480 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '480 Patent is

titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same." A true and correct copy of the '480 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     VCA is the assignee of all right, title, and interest in the '480 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '480 Patent. Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '480 Patent by Defendant.

11.     The invention relates to the field of creating and distributing media content, in particular, creating media content based upon submissions received on an electronic media exchange. At the time of the original invention in 1998, there was an Internet-centric problem that required a technical solution—how to develop a computer system that would allow remote contributors of electronic content to share and collaborate their content to develop new media content. The claimed invention, which predates modern crowdsourcing solutions, offers a unique, unconventional, and specially configured combination of "subsystems" in which to address the Internet-centric problem.

12.     As set forth in the claims, the claimed invention has a collection of unconventional and particularly configured subsystems, including:

- "an electronic media submissions server subsystem,"

- "an electronic multimedia creator server subsystem,"

- "an electronic release subsystem,"

- "an electronic voting subsystem," and

- their corresponding specialized databases.

13.     Each of these subsystems are configured in a very specific (and not generic), unconventional and non-routine manner to offer the novel and non-obvious claimed invention.

For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users. This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world. This is one of the many specialized databased required in the claim. In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7. This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

14.     As another example, the claim requires a specifically configured "electronic media submission server subsystem." This subsystem is defined as specifically having:

- "one or more data processing apparatus,"

- "an electronic media submission database stored on a non-transitory medium," and

- "a submissions electronic interface."

The "submissions electronic interface" is further specifically "configured" [1] "to receive electronic media submissions from a plurality of submitters over a public network, and [2] store the electronic media submissions in the electronic media submission database." Further, "the electronic media submissions database" in this subsystem is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission." Collectively, the level of detail included in this very particular, well-defined, and unconventional subsystem makes clear that the claims include substantially more than the alleged abstract idea or merely performing an alleged abstract idea on a computer.

15.     Similarly, the claim also requires a separate specifically configured "an electronic multimedia creator server subsystem." The claim specifically defines how this second subsystem

interacts with other components including being "operatively coupled to the electronic media submissions server subsystem." The claim also specifically defines this subsystem as "having":

- "one or more data processing apparatus" and

- "an electronic creator multimedia database stored on a non-transitory medium."

16. This subsystem is also specifically "configured [1] to select and [2] retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server." The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes to develop multimedia content to be electronically available for viewing on user devices." Even more detail is provided by requiring "the identification of the submitter [be] maintained with each selected and retrieved submission within the multimedia content." Here again, collectively, the level of detail included in this very particular and well-defined and unconventional subsystem makes clear that the claims include substantially more than an alleged abstract idea or merely performing an alleged abstract idea on a computer.

17. The claim also includes "an electronic release subsystem," which is well defined and not conventional or routine. The claim defines how this subsystem is "operatively coupled to the electronic multimedia creator server subsystem." The claim also defines the components of this subsystem as having "one or more data processing apparatus" and being particularly "configured to make the multimedia content electronically available for viewing on one of more user devices." These details, collectively, also make this very particular and well-defined and unconventional subsystem substantially more than an abstract idea or performing an abstract idea on a computer.

18.     The claim also requires "an electronic voting subsystem," which is well-defined, specific, and unconventional.   This claimed subsystem has "one or more data processing apparatus" and is specifically "configured to enable a user to electronic vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content."

19.     Claim 1 is a specific and discrete implementation.  For example, the claim requires an "electronic content filter" located at the server, remote from end users, and customizable based on user attributes.  As another example, the "electronic voting subsystem" at the time of the invention was novel and inventive and added sufficient inventive contributions to avoid a risk of preempting creating and distributing media content.    It is possible to create and distribute media content without ever having to include a "voting" subsystem on what components should be included in such media content.  The detailed configuration "to enable a user to vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content" has the level of particularity that avoids any risk of preemption.

20.     Furthermore, the very particular and specifically configured "electronic media creator subsystem" not only provides a detailed and unique physical structure and interrelationship with other claimed components, but also includes a very specific configuration that is not conventional or routine.  The claims make clear the interrelationship of the "electronic multimedia creator server subsystem" with respect to "the electronic media submission server subsystem" which must be "operatively coupled" thereto.  The claims also provide detail on how the "electronic media creator subsystem" is "configured" "to select and retrieve a plurality of electronic media submissions from the electronic media submission database using an electronic

filter." They also provide detail on how the "electronic filter" is "based at least in part on at least one of the one or more user attributes" and specifies that "the identification of the submitter is maintained with each selected and retrieved submission within the multimedia content."

21.     These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '480 patent before the United States Patents and Trademark Office.

22.     **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claim 1 of the '480 Patent in Illinois, and elsewhere in the United States, by employing a computer-based system using https://www.grubhub.com/ ("Accused Instrumentality") (*e.g.,* https://www.grubhub.com/). Grubhub uses a computer-based system for its Accused Instrumentality, to enable user-restauranteurs to create a personalized virtual restaurant profile and share multimedia content pertaining to food offerings which may be ordered by user-customers through Grubhub and delivered to the user-customers by user-drivers. The multimedia content includes image content and textual content pertaining to food offered by the user-restauranteurs, which may be shown to other users based on, *inter alia*, user-restauranteur attributes. On information and belief, and as shown in certain respects below, the Accused Instrumentality is representative of the systems involved with The Accused Instrumentality in relevant respect pertaining to infringement of the asserted patent. Grubhub, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality and the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Grubhub uses and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, and

SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.*, https://www.youtube.com/watch?v=-W9Wwzh8ovk).



(*E.g.*, https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).



(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).



(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).



(*E.g.,* https://w3techs.com/sites/info/seamless.com).

23.     Grubhub's Accused Instrumentality includes an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received

submissions   from a plurality of user-restaurateurs, for example content pertaining to their respective electronic media submissions/virtual restaurant on the Accused Instrumentality, as well as multimedia content to be displayed on one or both of the user-restaurateur's profile and the virtual restaurant, as discussed and shown for example in connection with the above discussion. The submissions include a virtual menu (a listing of the food offered for sale), a title and/or description of the food offered, a restaurant logo and a cover page. The submissions are provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a web-based content portal, accessible for example by logging in and selecting options to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* user-restauranteurs) over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality.



(*E.g.,* https://web.archive.org/web/20200402052340/https://get.grubhub.com/).



Priebatsch, Grubhub's chief revenue officer. "The Direct Order Toolkit delivers on that commitment and makes it easy for restaurant owners to offer takeout and delivery on their own channels by adding these commission-free online ordering capabilities."



*Above left: Customizations for the Direct Order Button. Above right: Download options for the Direct Order QR Code*

The Direct Order Toolkit is available to restaurants directly on their Grubhub for Restaurants Dashboard. These solutions improve upon Grubhub's previous online ordering link solutions, offered since 2013 and used for millions of marketing commission-free orders to restaurants.

(*E.g.,* https://about.grubhub.com/news/grubhub-gives-restaurants-expanded-commission-free-ordering-solutions).

16



(*E.g.,* https://www.youtube.com/watch?v=rdHdC9K_zwc).



(*E.g.,* https://www.youtube.com/watch?v=b1dMzd3ktRY).

24.     The electronic media submissions database of the Accused Instrumentality used by Grubhub which stores the submissions further stores data identifying the submitter and data indicating content for each electronic media submission/virtual restaurant. As shown below, data identifying the user-restaurateur includes *e.g.,* a name, logo and a profile photo. Data indicating content for each electronic media submission includes the menu as well as images and textual content pertaining to food offered for sale.



(*E.g.*, https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=-W9Wwzh8ovk).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

25.     Individual user-restauranteurs can sign up and create virtual restaurants on the Accused Instrumentality, which is stored on a user database. Such user database is stored in memory available through the Accused Instrumentality, for example as discussed above. The user attributes of user-restaurateurs who create virtual restaurant may include *e.g.,* a food category or food categories of the virtual restaurant, the physical location of the restaurant, whether the virtual restaurant offers pick-up or delivery, and the offering of promotions or coupons by the virtual restaurant and the like as shown in the examples below.



(*E.g.*, https://www.youtube.com/watch?v=b1dMzd3ktRY).



(*E.g.*, https://www.youtube.com/watch?v=si1rprSHpc4).



**Scrape GrubHub Restaurant & Menu Data**

Stevesie Data
8.74K subscribers

Subscribe

👍 79 👎  ↪ Share  ⊟+ Save  •••

5,416 views Nov 12, 2019

(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).

26.     The Accused Instrumentality employs an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium, configured to select and retrieve a plurality of electronic media submissions (*e.g.,* virtual restaurants with associated photo content and textual content) from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server.  As can be seen below, such electronic content filter as is used by Grubhub is based at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia*, a food category or food categories of the virtual restaurant,

the physical location of the restaurant, whether the virtual restaurant offers pick-up or delivery, and the offering of promotions or coupons by the virtual restaurant) which in turn affect which electronic media submissions, *e.g.,* virtual restaurants and associated media, appear to the user as shown and discussed for example below. Grubhub uses function-specific subsystems, for example as discussed below.



(*E.g.,* https://www.youtube.com/watch?v=si1rprSHpc4).



(*E.g.*, https://www.youtube.com/watch?v=PvaMUw4I4Xw).



(*E.g.*, https://www.youtube.com/watch?v=4I0SgTAPf5U).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

27.     Such electronic content filter is used by the Accused Instrumentality to develop multimedia content (*e.g.,* the virtual restaurants and/or various content as discussed above) associated with the user-restaurateur to be electronically available for viewing on user devices (*e.g.,* devices such as computers and smart phones incorporating browsers or apps) wherein the identification of the submitter (*e.g.,* a user-restaurateur's virtual restaurant name and profile picture) is maintained with each selected and retrieved submission within the multimedia content, for example as shown below. In each selected and retrieved submission within the multimedia content, the identification of the submitter is also maintained.



(*E.g.*, https://www.youtube.com/watch?v=dUbPzqP4uOk).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants (*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

28.     The Accused Instrumentality employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve multimedia profile and/or post foods with associated photo, profile picture, and textual content to other users, configured to make the multimedia content electronically available for viewing on one or more user devices. For example, as shown below, multimedia content associated with the virtual restaurant is provided on various user devices (*e.g.*, a computer or other device with a web browser or app) in response to a user logging

in to the Accused Instrumentality. Grubhub uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=-W9Wwzh8ovk).



(*E.g.*, https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.youtube.com/watch?v=4I0SgTAPf5U).

29.     The Accused Instrumentality employs an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate (*e.g.*, by the user's choices with respect to a selection of one or more Stars and textual content in the form of a Review) an electronically available multimedia content (*e.g.*, a multimedia virtual restaurant provided by a user-restaurateur). Grubhub uses function-specific subsystems, for example as discussed below.



Scrape GrubHub Restaurant & Menu Data

Stevesie Data
8.74K subscribers

5,416 views  Nov 12, 2019

(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).



Filter your search by price range, distance from your address, and quality. Pro-tip: Compare the star rankings to the number of reviews a restaurant has received — if a restaurant has five stars with over a thousand reviews logged, there's a good chance it's pretty tasty!

(*E.g.,* https://blog.grubhub.com/can-you-trust-restaurant-reviews).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.youtube.com/watch?v=4I0SgTAPf5U).

30.     Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '480 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

31.     To the extent marking is required, VCA has complied with all marking requirements.

## IV.  COUNT II
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,477,665)

32.     Plaintiff incorporates the above paragraphs herein by reference.

33.     On October 25, 2016, United States Patent No. 9,477,665 ("the '665 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '665 Patent is titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."  A true and correct copy of the '665 Patent is attached hereto as Exhibit B and incorporated herein by reference.

34.     VCA is the assignee of all right, title, and interest in the '665 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '665 Patent.  Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '665 Patent by Defendant.

35.     The application leading to the '665 patent was filed November 16, 2012, which was a continuation of application no. 11/978,781, which issued as United States Patent No. 8,340,994, which was a continuation of application no. 09/565,438 which issued as United States Patent No. 7,308,413.  (Ex. B at cover).  The '665 patent was first assigned to Virtual Creative Artists, LLC. (*Id.*).

36.     The '665 Patent shares the identical specification as the '480 patent and therefore VCA incorporates the background and discussion of the invention in Paragraphs 11-18. Furthermore claim 1 involves a system for generating multimedia content.  The claim requires, among other things, electronically generating a multimedia file from the retrieved electronic media Submissions in accordance with a selected digital format, wherein the identification of the submitter is maintained with each retrieved submission within the multimedia file.  The claim requires electronically transmitting the multimedia file to a plurality of publicly accessible

webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser and.  This allows electronically transmit data indicating votes or rating of multimedia content in a much quicker and easier fashion based on specific user criteria.  There is nothing abstract about this very particular, unconventional, and non-routine system for the generation of multimedia content as specifically claimed and there is no risk of preempting creating and distribution contention generally, or even within the context of the Internet.

37.     The invention is a highly technical electronic process that cannot be achieved with the human mind and is instead rooted in computer technology, including the steps of:

- "electronically retrieving a plurality of electronic media submissions,"

- "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format,"

- "electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser," and

- "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content."

38.     Each of these subsystems are configured in a very specific (and not generic, unconventional and non-routine manner to offer the novel and non-obvious approach claimed invention.  For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users.  This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world.  This is one of the many specialized databased required in the claim.  In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this

level, Oracle7.  This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

39.    The claim also provides details to explain how each step operates.  For example, the claim requires "electronically retrieving a plurality of electronic media submissions from an electronic media submissions database using an electronic content filter located on one or more data processing apparatus."  Further, "the electronic media submissions database" in this step is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission."  The step further requires and "electronic content filter."  The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes."

40.    The claims also require an "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format." Manipulation of multimedia data in accordance with a selected digital format is far from generic and was not routine or conventional at the time of the invention.  Further, this step requires that the "electronic media submissions database" "stores data identifying the submitter" and the "the identification of the submitter is maintained with each retrieved submission within the multimedia file."

41.    The claims also require "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content," which is a well-defined, specific, and unconventional feature.  By including this additional voting/rating feature, the claims avoid any risk of preempting the creation and distribution of content.

42. The also has inventive concepts. For example, the claim requires that he filtering tool be at a specific location, remote from the end-users, with customizable filtering features specific to each end user. The "electronic content filter" is located at the server, remote from the end user, and customizable based on user attributes. The "electron voting" step at the time of the invention was also novel, inventive, and added sufficient inventive contributions to avoid a risk of preempting the creation and distribution of media content. It is clearly possible to create and distribute media content without every having to include a "voting" subsystem on what components should be included in such media content.

43. These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '665 patent before the United States Patent and Trademark Office.

44. **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claim 1 of the '665 Patent in Illinois, and elsewhere in the United States, by employing a computer-based system using https://www.grubhub.com/ ("Accused Instrumentality") (*e.g.,* https://www.grubhub.com/).

45. Grubhub uses a computer-based system for its Accused Instrumentality to enable user-restauranteurs to create a personalized virtual restaurant profile and share multimedia content pertaining to food offerings which may be ordered by user-customers through Grubhub and delivered to the user-customers by user-drivers. The multimedia content includes image content and textual content pertaining to food offered by the user-restauranteurs, which may be shown to other users based on, *inter alia*, user-restauranteur attributes. This system makes use of one or more data processing apparatus, and a computer readable medium coupled to the one or more data processing apparatus having instructions stored thereon which, when executed by the one or more

data processing apparatus, cause the one or more data processing apparatus to perform an electronic method comprising the functions as further discussed below. Grubhub, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality and for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Grubhub uses and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, and SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.,* https://www.youtube.com/watch?v=-W9Wwzh8ovk).



(*E.g.,* https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).



(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).



(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).



(*E.g.,* https://w3techs.com/sites/info/Grubhub.com).

46.     The Accused Instrumentality electronically retrieves a plurality of electronic media submissions from an electronic media submissions database on a non-transitory medium, for example multimedia content pertaining to building a virtual restaurant on the Accused

Instrumentality. The submissions include a virtual menu (a listing of the food offered for sale), a title and/or description of the food offered, a restaurant logo and a cover page. Individual user-restauranteurs can sign up and create virtual restaurants on Grubhub's Accused Instrumentality, which is stored on a user database. Such user database is stored in memory available through the Accused Instrumentality, for example as discussed above. The user attributes of user-restaurateurs who create virtual restaurant may include *e.g.,* a food category or food categories of the virtual restaurant, the physical location of the restaurant, whether the virtual restaurant offers pick-up or delivery, and the offering of promotions or coupons by the virtual restaurant and the like as shown in the examples below. Grubhub's Accused Instrumentality employs an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium, configured to select and retrieve a plurality of electronic media submissions (*e.g.,* virtual restaurants with associated photo content and textual content) from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server. As can be seen below, such electronic content filter as is used by Grubhub is based at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia,* a food category or food categories of the virtual restaurant, the physical location of the restaurant, whether the virtual restaurant offers pick-up or delivery, and the offering of promotions or coupons by the virtual restaurant) which in turn affect which electronic media submissions, *e.g.,* virtual restaurants and associated media, appear to the user as shown and discussed for example below. As shown below, the Accused Instrumentality utilizes the same electronic content filter as the Accused Instrumentality, and is based on at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia,*

a food category or food categories of the virtual restaurant, the physical location of the restaurant, and whether the virtual restaurant offers pick-up or delivery) which in turn affect which electronic media submissions, *e.g.,* virtual restaurants and associated media, appear to the user as shown and discussed for example below. Grubhub uses function-specific subsystems, for example as discussed below.



(*E.g.,* https://www.youtube.com/watch?v=si1rprSHpc4).



(*E.g.*, https://www.youtube.com/watch?v=PvaMUw4I4Xw).



(*E.g.*, https://www.youtube.com/watch?v=4I0SgTAPf5U).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

47.    The Accused Instrumentality includes an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of user-restaurateurs, for example content pertaining to their respective electronic media submissions/virtual restaurant on the Accused Instrumentality, as well as multimedia content to be displayed on one or both of the user-restaurateur's profile and the virtual restaurant, as discussed and shown for example in connection with the above discussion. The submissions include a virtual menu (a listing of the food offered for sale), a title and/or description of the food

offered, a restaurant logo and a cover page. The submissions are provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a web-based content portal, accessible for example by logging in and selecting options to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* user-restauranteurs) over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality.



(*E.g.,* https://web.archive.org/web/20200402052340/https://get.grubhub.com/).



Priebatsch, Grubhub's chief revenue officer. "The Direct Order Toolkit delivers on that commitment and makes it easy for restaurant owners to offer takeout and delivery on their own channels by adding these commission-free online ordering capabilities."



*Above left: Customizations for the Direct Order Button. Above right: Download options for the Direct Order QR Code*

The Direct Order Toolkit is available to restaurants directly on their Grubhub for Restaurants Dashboard. These solutions improve upon Grubhub's previous online ordering link solutions, offered since 2013 and used for millions of marketing commission-free orders to restaurants.

(*E.g.*, https://about.grubhub.com/news/grubhub-gives-restaurants-expanded-commission-free-ordering-solutions).



(*E.g.,* https://www.youtube.com/watch?v=rdHdC9K_zwc).



(*E.g.*, https://www.youtube.com/watch?v=b1dMzd3ktRY).

48.     The electronic media submissions database of the Accused Instrumentality used by Grubhub which stores the submissions further stores data identifying the submitter and data indicating content for each electronic media submission/virtual restaurant. As shown below, data identifying the user-restaurateur includes *e.g.,* a name, logo and a profile photo. Data indicating content for each electronic media submission includes the menu as well as images and textual content pertaining to food offered for sale. As shown below, data identifying the submitter and data indicating content for each electronic media submission/virtual restaurant also appears on Seamless in the same manner.



(*E.g.*, https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=-W9Wwzh8ovk).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

49. The Accused Instrumentality electronically generates multimedia files from the retrieved electronic media submissions, in accordance with a selected digital format, (*e.g.,* a digital format compatible with a selected digital format compatible with the particular device such as a computer or smart phone incorporating one or more browsers or apps) and the identification of the submitter is maintained with each retrieved submission within the multimedia file. As shown below, such data identifying the user-restaurateur includes, *e.g.,* a name.



(*E.g.,* https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=-W9Wwzh8ovk).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.,* https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

50. The Accused Instrumentality, in order to distribute its multimedia file to a geographically distributed userbase, electronically transmits the multimedia file to a plurality of publicly accessible webservers, so as to make electronically available multimedia profiles and/or postings of foods with associated photo, profile picture, and textual content to other users, configured to make the multimedia content electronically available for viewing on one or more user devices over a public network (*e.g.,* the Internet). For example, as shown below, multimedia content associated with the virtual restaurant is provided on various user devices (*e.g.,* a computer or other device with a web browser or app) in response to a user logging in to the Accused

Instrumentality. In the same manner, multimedia content associated with the virtual restaurant is provided on various user devices (*e.g.,* a computer or other device with a web browser or app) in response to a user logging in to the Accused Instrumentality. Grubhub uses function-specific subsystems, for example as discussed below.



(*E.g.,* https://www.youtube.com/watch?v=-W9Wwzh8ovk).



(*E.g.*, https://www.youtube.com/watch?app=desktop&v=GfwnygXn-A0).



(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants (*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

51.    The Accused Instrumentality employs a web-based graphical user interface enabling its users to electronically access an electronic voting subsystem, enabling tracking of voting or electronic rating, configured to enable a user to electronically transmit data indicating a vote for or rating of  (*e.g.*, by the user's choices with respect to a selection of one or more Stars and textual content in the form of a Review) an electronically available multimedia content (*e.g.*, a multimedia virtual restaurant provided by a user-restaurateur).  In the same manner, the Accused Instrumentality also employs a web-based graphical user interface enabling its users to electronically access an electronic voting subsystem, enabling tracking of voting or electronic

rating, configured to enable a user to electronically transmit data indicating a vote for or rating of (*e.g.,* by the user's choices with respect to a selection of one or more Stars and textual content in the form of a Review) an electronically available multimedia content (*e.g.,* a multimedia virtual restaurant provided by a user-restaurateur). Grubhub uses function-specific subsystems, for example as discussed below.



(*E.g.,* https://www.youtube.com/watch?v=4I0SgTAPf5U).



(*E.g.,* https://blog.grubhub.com/can-you-trust-restaurant-reviews).



Seamless offers many types of cuisine, including Italian, Chinese, American, and more. The service allows you to see a list of restaurants

(*E.g.*, https://www.lifewire.com/how-does-seamless-delivery-work-4628129).

52.     Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '665 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53.     To the extent marking is required, VCA has complied with all marking requirements.

## V.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.  Judgment that one or more claims of United States Patent No. 9,501,480 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.  Judgment that one or more claims of United States Patent No. 9,477,665 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c.  Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d.  That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.  That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

January 25, 2024                           Respectfully Submitted,

*/s/Steven G. Kalberg*
David R. Bennett (IL Bar No.: 6244214)
Steven G. Kalberg (IL Bar No.: 6336131)
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
Telephone: (847) 508-1294
skalberg@directionip.com

*Attorneys for Plaintiff*
*Virtual Creative Artists, LLC*